Mr. Timothy M. Barrett
108 Galaxy Way
Yorktown, Virginia 23693
(757) 342-1671

RECEIVED

JUL 1 5 2019

Elliott Lawson & Minor, P.C.

July 9, 2019

Clerk of Court
Circuit Court for Grayson County
P. O. Box 130
129 Davis Street
Independence, VA 24348-0130

RE:   *Timothy M. Barrett v. Commonwealth of Virginia,* et. al
       Case Number: CJ09-03

Dear Clerk:

Please find enclosed an original of my Motion for Sanctions, Motion to Quash and a Response to Respondent Minor's Motion as to the $10,715.00 and Other Motions and Her Memorandum in Support of Said Motion, which I ask that you file in the usual manner and present to Judge Harrell for his immediate review.

Thank you so very much for your cooperation in this matter, and should we need to discuss it, please do not hesitate to call.

Sincerely,

Timothy M. Barrett

CC:   Mr. Steven R. Minor, Esquire, Attorney for Mrs. Minor
       Ms. Stephen Solomon, Esquire, Attorney for DCSE

VIRGINIA:  IN THE CIRCUIT COURT FOR GRAYSON COUNTY

TIMOTHY M. BARRETT,

                          Petitioner,

v.                                                    CASE NUMBER: CJ09-03

COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF SOCIAL SERVICES,
DIVISION OF CHILD SUPPORT ENFORCEMENT,
EX. REL VALERIE JILL RHUDY MINOR and
VALERIE JILL RHUDY MINOR,

                          Respondents.

### MOTION FOR SANCTIONS, MOTION TO QUASH AND A RESPONSE TO RESPONDENT MINOR'S MOTION AS TO THE $10,715.00 AND OTHER MOTIONS AND HER MEMORANDUM IN SUPPORT OF SAID MOTION

**COMES NOW** the Petitioner, Timothy M. Barrett, *pro se*, and pursuant to Virginia Code §8.01-271.1 does hereby move this Court for sanctions in the amount of $5,000.00 to compensate your Petitioner for his time in responding to Respondent Minor's Motions and to deter the Minors from filing such frivolous motions in the future.   And moves to quash Respondent Minor's Motion on Mrs. Barrett.   In support of said Motion and in response to Respondent Minor's Motion and Memorandum states as follows:

#### *This Court Lacks Subject Matter Jurisdiction Under Rule 1:1*

1.       Before responding to the argument made by Mr. Minor in his 6/27/2019 Memorandum, we must ask this Court to exercise its jurisdiction to determine if it has subject matter jurisdiction to provide the relief sought by Mr. Minor, for if it does not, any order it enters would be void *ad initio*. See *Morrison v. Bestler*, 239 Va. 166, 170 (1990):

While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void.

2.      The matter of the disbursing of the $10,715.00 was before this Court during the hearing of Case Number CH09-03.

3.      In deciding the matter, this Court made the following ruling, incorporating the same into its 12/28/18 child support order:

**Appeals Bond in the City of Bristol Circuit Court Clerk's Office**

The state of an appeals bond in the City of Bristol Circuit Court Clerk's Office is not a subject of this mandate. This Court does not have jurisdiction to exercise authority over the City of Bristol Circuit Court Clerk. This Court takes no action on that matter.

4.      In other word, this Court ruled that it would take no action on the disposition of the appeal bond, which is to say it would not enforce the bond.

5.      More than this, this Court did not give your Petitioner credit for the bond in determining his support arrearage, which had the effect of increasing his arrearage and the amount of interest he would have to pay on that arrearage.

6.      That ruling was made more than 21 days ago.

7.      Per Rule 1:1 of the Rules of the Supreme Court, this Court's subject matter jurisdiction over the case expired at the end of the 21-day period following the entry of its final order on 12/28/18:

All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.

See also *Kelley v. Stamos*, 285 Va. 68 (2013), where the Virginia Supreme Court ruled that the running of the 21-day period causes a trial court to lose the subject matter jurisdiction to modify the final order.

8.      Therefore, this Court has no subject matter jurisdiction to modify its 12/28/18 order that refused to enforce the Judge Geisler's 2010 and 2011 suspension bond and Judge Gibb's 11/9/2012 suspension bond orders.

9.      Lest Mr. Minor argue that this is an enforcement action, which is not affected by the running of the 21-day limitation on a trial court's subject matter jurisdiction, we would agree with him *but only if this Court had not previously ruled on this issue.* Because it previously ruled, Mr. Minor is **not** asking this Court to enforce the bond *per se*, but is, instead, asking the Court to modify its previous refusal to enforce the bond when it no longer has subject matter jurisdiction to do so.

10.      This is all the more clear in that if the Court were to modify its refusal to enforce the bond in its 12/28/18 child support order, it would also have to modify the arrears amount, which it clearly has no power to do under Rule 1:1.

11.      Therefore, this Court simply lacks the subject matter to grant the relief Mr. Minor requests in his Motion, requiring this Court to deny said Motion.

### *This Court Lacks Subject Matter Jurisdiction at Common Law*
### *Because the Case was Appealed to the Court of Appeals of Virginia*

12.      This Court's ruling as to the suspension bond in its 12/28/18 child support order, among other rulings, was appealed to the Court of Appeals of Virginia, being docketed on January 14, 2019, and becoming *Barrett v. Commonwealth*, Record Number 0074-19-3.

13.      When a case is appealed from a circuit court to an appellate court, the circuit court is divested of subject matter jurisdiction over the matter with the appellate courts having exclusive jurisdiction until such time as the Virginia Supreme Court decides the matter with finality.  See *Greene v. Greene*, 223 Va. 210, 212 (1982):

The orderly administration of justice demands that when an appellate court acquires jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken must cease. We acquired jurisdiction over this matter when Mrs. Greene's petition for appeal was filed and docketed in the Clerk's Office of this Court, and thereafter corrections and alterations could be made only with leave of this Court.

See also *McCoy v. McCoy*, 55 Va. App. 524, 528 (2010)(Internal citations and quotes omitted):

When a party files a notice of appeal, that notice effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.

Finally, see *Frazer v. Frazer*, 23 Va. App. 358, 379-80 (1996), where the Court of Appeals found that the trial court lacked authority to modify a child support award after one of the parties filed a notice of appeal.

14.     As stated above, this Court already ruled on the 2010 and 2011 suspension bonds, choosing to forgo any action upon them.  Mr. Minor is asking this Court to modify that ruling though, because of the appeal, it lacks subject matter jurisdiction to do so without leave of the Court of Appeals, which Mr. Minor has not sought.

15.     Because this Court lacks subject matter jurisdiction to modify its 12/28/18 child support order, Mr. Minor's Motion must be denied.

16.     We note that Mr. Minor did not appeal this Court's ruling of this Court as to this issue to the Court of Appeals, which means he is stuck with it.  Of course, assuming the Court of Appeals affirms this Court's 12/28/18 child support order, the transfer of the funds from the Bristol Circuit Court to this Court will operate as a material change in circumstances to justify a new order.  And if it reverses, this Court can disburse the funds as it sees fit in keeping with the reversing mandate. But it must deny Mr. Minor's Motion now, regardless of what may happen in the future.

*This Court Lacks Subject Matter Jurisdiction to Disburse the Funds*

### *for the Order Transferring them from the Bristol Circuit Court to this Court is Void* Ab Initio *for Lack of Subject Matter Jurisdiction.*

17.    But there is another reason not to reject Respondent Minor's Motion on jurisdictional grounds – The order of the Bristol Circuit Court (BCC) transferring the remainder of the 2010 and 2011 suspension bonds from itself to this Court was done without subject matter jurisdiction, making its order void *ab initio*.

18.    When the BCC dismissed both the child support and contempt matters that had been unlawfully transferred to it by Judge Gibb, both parties moved the BCC to deal with the 2010 and 2011 suspension bonds, with your Petitioner asking the BCC to return the funds to this Court and Respondent Minor asking the BCC to disburse to her the funds.

19.    But the BCC refused to deal with the 2010 and 2011 suspension bonds one way or the other, ruling that it had no jurisdiction to do anything with them.

20.    The Court of Appeals affirmed this ruling in *Barrett v. Commonwealth*, Record Numbers 1613-14-3 and 1614-14-3 (Ct. of App. 5/19/15), stating that the BCC was not mandated to deal with the bond and, therefore, did not err in refusing to do so.  Furthermore, the Court of Appeals ruled that the only jurisdiction the BCC had was to determine it had jurisdiction, and since it had none, any order it entered, other than dismissal, would have been void *ab initio*.

21.    Given the lack of subject matter jurisdiction of the BCC over the 2010 and 2011 suspension bonds, its 3/18/19, order sending the 2010 and 2011 suspension bond funds back to this Court was without subject matter jurisdiction according to the Court of Appeals, and hence, void *ad initio*.

22.    This is especially true when the case before the BCC upon which the order is founded was resolved in 2015, which is way more than 21 days ago, further rendering the BCC without subject matter jurisdiction per Rule 1:1 of the Rules of the Supreme Court.

23.    Had the BCC done nothing as commanded by the Court of Appeals, this Court will still not have the funds and would be clearly obligated to go with its ruling as to these bonds in its 12/28/18 child support order.

24.    But because the BCC ignored its own lack of subject matter jurisdiction, Mr. Minor is now asking this Court to disburse funds it would not have possession of but for the 3/18/19 order of the BCC, which is patently void.

25.    Based on the holding in *Ferry*, *Harris* and *Porter v. Commonwealth*, 276 Va. 203, 228, 661 S.E.2d 415, ___ (2008)("[A] judgment on the merits made without subject matter jurisdiction is null and void... Likewise, any subsequent proceeding based on such a defective judgment is void or a nullity..."), any order this Court enters, being based on the BCC's defective judgment, would likewise be void *ab initio*.

26.    There is simply no way around the fact that this Court lacks subject matter jurisdiction at this state of the proceedings to deal with the 2010 and 2011 suspension bonds and will not have any until such time as the Court of Appeals rules.

### *Your Petitioner has Executed and Paid the Suspension Bond*

27.    By an order dated 2/8/19, this Court set the amount of your Petitioner's 2019 suspension bond at $105,206.12 based on the request of Mr. Minor that it do so.

28.    This amount was based on Mr. Minor's calculation as to the absolute most that your Petitioner could owe considering the Court's 12/28/18 child support order and that fact that the

parties' youngest child has aged out and your Petitioner is no longer accruing additional child support obligations.

29.     In other words, even assuming that the Court of Appeals affirms this Court's 12/28/18 child support order in full, your Petitioner will owe no more money than is present being held by the Court in the name of your Petitioner.

30.     As to any amount your Petitioner could possibly owe the Respondents, the Respondents are fully secured by the funds and bond presently being held by the Court in the name of your Petitioner.

31.     Furthermore, your Petitioner has executed a suspension bond which fully guarantees that whatever funds are ultimately owed to the Respondents, the Court has the absolute authority to dispense those funds to them.

32.     Neither Mr. Minor nor DCSE has objected to the form or content of the bond or otherwise noted any defect in the bond, which implies it is perfectly fit to its stated objected even in their minds.

33.     Given these facts, even if this was an enforcement action and not a request that the Court modify its 12/28/18 child support order, which is has no jurisdiction to do, Virginia law is clear that your Petitioner has satisfied the conditions of the suspension bond per Va. Code §8.01-676.1.

34.     As he has so satisfied the legal conditions of his suspension bond, Va. Code §8.01-676.1(C) demanding this Court comply with its command that "execution shall be suspended upon the filing of such security and the timely prosecution of such appeal" is invoked.

35.     Thus, the relief sought by Mr. Minor is his Motion is barred by Virginia law, demanding

that this Court deny his Motion.

### The Law of the Case Doctrine Bars the Relief Sought by Mr. Minor's Motion

36.     Mr. Minor argues in his Memorandum that, in effect, the contingency specified in the

2010 and 2011 suspension bonds have been satisfied, by which he appears to argue that the

Court can now disburse the bonds.

37.     But this argument must be rejected considering Judge Gibbs 11/9/12 orders that were

entered as a result of the same argument made here being made to Judge Gibb by Mr. Minor.

38.     See Exhibit 1 for an exacting copy of Judge Gibb's 11/9/12 orders in CH09-03, which

incorporates by reference his order in CH09-04.

39.     Because this argument made by Mr. Minor has already been ruled upon and decided

against Mr. Minor with no appeal by him, the Law of the Case Doctrine precludes this Court from

reaching a contrary decision.   See 1382-10-3 where the Court of Appeals summarizes this

doctrine as follows:

> Pursuant to the "law of the case" doctrine, when a party fails to challenge a decision
> rendered by a court at one stage of litigation, that party is deemed to have waived her
> right to challenge that decision during later stages of the "same litigation." See *Kondaurov
> v. Kerdasha*, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006). The "law of the case" doctrine
> applies both to issues that were actually decided by the court, and also to issues
> "necessarily involved in the first appeal, whether actually adjudicated or not." Kemp [v.
> Miller], 160 Va. [280] 285, 168 S.E. [430,] 431[(1933)].

40.     Mr. Minor did not appeal Judge Gibb's orders then, making them the law of the case,

demanding that this Court deny Mr. Minor now.

41.     But it is critical to note what Judge Gibb decided, for in doing so its negative impact on

Mr. Minor's motion will be doubly clear.

42.    When Judge Geisler's entered his 2010 child support and contempt orders, he found your

Petitioner to be in arrears approximately $9,800.

43.    Due to the appeal bonds being set high and them being paid out less than they were set,

that amount grew to the $10,715.00 that Mr. Minor is seeking.

44.    But Judge Gibb refused to disburse that amount to Mr. Minor because the conditions of

the 2010 and 2011 suspension bonds had been met when your Petitioner paid this amount to

the Respondents as part of his paying the contempt judgment of Judge Dorsey, which included

the arrears found by Judge Geisler in June, 2011.

45.    In addition, Mr. Minor argued in the Court of Appeals that this amount was paid in a case

that, in the judgment of Judge Gibb, Mr. Minor won.  Thus, Mr. Minor was judicially estopped

from arguing that the conditions of the 2010 and 2011 suspension bonds had not been met.

46.    In other words, Mr. Minor could not double dip.  He had already received the funds that

were secured by the 2010 and 2011 bond and could not receive them again.

47.    The same ruling applies today.  Mr. Minor cannot have the money under the 2010 and

2011 suspension bonds because he already received it.  That is the law of this case under the Law

of the Case Doctrine.

48.    Mr. Minor is clearly being duplicitous with the Court, arguing contrary positions

depending on the circumstances to enrich his wife, which ultimately enriches him.   But this is

not the only instance in this Motion.

49.    Mr. Minor argued in the Bankruptcy Court that Ms. Crawford, your Petitioner's Trustee

should not have the funds at issue in his Motion, though she sought them, but rather that the

Bankruptcy Court should release the automatic stay to allow this Court to determine if the money

goes to Mrs. Minor as child support or to your Petitioner because his child support obligation is

less than $10,715.00, and if goes to your Petitioner, this Court must turn it over to Ms. Crawford.

The Bankruptcy Court agreed with Mr. Minor, entering an order to this effect on 8/28/18

50.     See Exbibit 2 for an exacting copy of Bankruptcy Court's Chief Judge Carlota M. Bohm's

8/28/18 Order in this regard.

51.     But Mr. Minor is desperately trying to play both sides against the middle, for he has

argued in his Motion, though giving lip service to the fact that the automatic stay has been lifted,

that because of the automatic stay, this Court cannot consider these funds to belong to your

Petitioner and cannot be counted toward his 2019 suspension bond.

52.     But given that Mr. Minor won in the Bankruptcy Court as to relief from the stay with this

Court deciding if the money is mine, he is judicially estopped from arguing to the contrary in this

Court. As the Virginia Supreme Court said in *D'Ambrosio v. Wolf*, 295 Va. 48, 58 (2018) (internal

citations and quotations omitted):

> Judicial estoppel is an equitable doctrine designed to prevent litigants from playing fast
> and loose with the courts or blowing hot and cold depending on perceived self-interest.
> The fundamental requirement for its application is that the party sought to be estopped
> must be seeking to adopt a position that is inconsistent with a stance taken in a prior
> litigation. Additionally, if the inconsistent positions involve different proceedings, the
> parties to the proceedings must be the same, and the inconsistent position must have
> been relied upon by the court or prior court in rendering its decision.

53.     Mr. Minor is desperate to obtain any funds on behalf of his wife (which ultimately means

on behalf of himself) and will resort to these types of unethical and unlawful arguments to do so.

54.     We believe this is because he is confident he is going to lose this appeal.  His arguments

in his Reply Brief were incredibly weak, even arguing that this Court's award to child who had

reached the age of majority was allowed for this Court was merely it retroactively modifying the

2007 order to give me a break.  But this argument is in contradiction to the plain and express

meaning of Va. Code §20-108, which precludes a retroactive modification of a prior support

order.  He has also moved the Court of Appeals to dismiss portions of the appeal on the ground

that because the youngest child has aged out, there is no order this Court can enter on remand,

making the appeal moot.   This is a tacit admission that if the case is reversed, he knows that the

Court will have to deny him any support going back to 10/1/10.  It is also factually bogus, for the

Court can continue to enter orders in this case on remand.  It just cannot order any support be

awarded.

55.     Thus, this may be Mr. Minor's only shot at receiving any money and he is taking it no

matter what unethical and illegal arguments he must make.

56.     It is for this reason that we will argue for sanctions below.  But for now, the Law of the

Case Doctrine and the doctrine of judicial estoppel as found by Judge Gibb demands that his

Motion be denied.

### *Judge Gibb's Ruling has Another Effect*

57.     As stated in Judge Gibb's 11/9/12 orders, your Petitioner has satisfied the conditions of

the 2010 and 2011 suspension bonds by his payment of the arrears' judgment of Judge Dorsey.

58.     But at my request and because I had not been making payments, I asked Judge Gibb to

keep the money to go against future payments, which is the same thing I asked this Court to do

in November, 2018.

59.     Yet, here, Mr. Minor is arguing that because the Court of Appeals affirmed Judge Geisler's

2010 child support order at least in part, that satisfies the condition of the 2010 and 2011

suspension bond.

60.     This is a critical piece of his argument, for he then argues that because of this action of

the Court of Appeals, the Court can now decide who owns the 2010 and 2011 suspension bonds,

but it will not be your Petitioner, and therefore the money cannot go to his 2019 suspension

bond.

61.     But it is not the Court of Appeals' ruling that satisfied the bond, but your Petitioner's

payment of the arrears' judgment of Judge Dorsey that did so per Judge Gibb.

62.     This freed the funds up to be used as your Petitioner dictated in 2012, which was that it

be used to pay any future arrearages, if any.

63.     As this was clearly Judge Gibb's intent with his 11/9/12 orders, it is without any question

that your Petitioner can count these funds toward the $105,206.12 2019 suspension bond set by

this Court.

63.     Given this, Mr. Minor's argument falls apart as being based on a factually false premise.

64.     Given this, his Motion must be denied.

### *The Court Should Consider Potential Negative Consequences of Ruling on Mr. Minor's Motion Prior to the Court of Appeals Ruling.*

65.     Suppose this Court rules in favor of Mr. Minor's Motion and disburses to him the funds

from the 2010 and 2011 suspension bonds on 7/19/19.

66.     Assume further than the Court of Appeals reverses and on remand you ultimately find

that the Respondents are owed less than $10,715.00 in child support.

67.     I can assure the Court that if the Court of Appeals reverses in a way that commands a new

support determination with the date of retroactivity being 10/1/2010, I will not owe the

Respondents one dime as now all of the children have reached the age of majority.  To the

contrary, they will owe me approximately $34,000.00, the amount, more or less, the Court said I paid after 10/1/2010.

68.    This means that the Court should have provided me (which is to say Ms. Crawford) with the $10,715.00, not Ms. Minor.

69.    This will place Mrs. Minor, DCSE and this Court in violation of federal bankruptcy law.

70.    I do not know her that well, but Ms. Crawford appears to take her job as Trustee very seriously and will not simply let the $10,715.00 go on this Court's say-so when Virginia law says the money should have come back to me (which is to say to her).

71.    Therefore, in a roundabout way, federal bankruptcy law demands that this Court keep the funds in the legal safety of the Clerk of Court's account and wait for the Court of Appeals to rule however it may.

72.    In support of this claim, do note that Judge Bohm denied Ms. Crawford demand that the funds be turned over to her "without prejudice", allowing Ms. Crawford to again petition for the funds after the Court of Appeal rules.

72.    Given this, an abundance of caution demands that this Court deny Mr. Minor's Motion without prejudice until such time as the Court of Appeals rules.

### *Response to the Specific Arguments Made by Mr. Minor.*

73.    Even taking for granted Mr. Minor's understanding of bankruptcy law as found in Paragraphs 1 and 2 of his Memorandum, it is quite irrelevant to the issue before this Court raised in Mr. Minor's Motion, for as Mr. Minor admits, the Bankruptcy Court has released the funds from the automatic stay, allowing this Court to determine the ownership of the money per Virginia law. Indeed, it is Virginia law and not Federal Bankruptcy Law that will determine the

ownership of these funds, for as Bankruptcy Judge Bohn said in a hearing in her courtroom on

7/1/2019, she knows nothing about Virginia domestic relations law.  Given this, bankruptcy law

is utterly irrelevant as to how this Court decides Mr. Minor's Motion.

74.      Of course, as Mr. Minor argues in Paragraph 3 of his Memorandum, if the Court of Appeals

affirms this Court's 12/28/18 child support order, this Court will disburse the bond to Mrs.

Minor/DCSE as child support with the Ms. Crawford as the Bankruptcy Trustee taking nothing.

But if the Court of Appeals reverses and, on remand, this Court finds that the amount of support

is less than $10,715.00, this Court will disburse the amount it finds as your Petitioner's support

obligation to Mrs. Minor/DCSE with the remainder going to Ms. Crawford per Judge Bohn's

8/28/18 Order Number 113.  But this too is utterly irrelevant as to how this Court is to decide Mr.

Minor's Motion.  Indeed, this demonstrates that Mr. Minor Motion is way too premature.  It is

not possible for the Court to decide who owns the funds at this stage of the litigation, for the

Court of Appeals has yet to speak on the subject.  Therefore, even if the Court was not bared by

Virginia law from do anything with these funds save continuing to hold on them, for execution

has been suspended, the relief sought by Mr. Minor is not ripe for adjudication.  More on this

below.  And again, we reiterate that Judge Bohn has released the parties and the Court from the

automatic stay as to these funds, making the bankruptcy law cited by Mr. Minor irrelevant.

75.      And we agree with Mr. Minor in Paragraphs 4 and 5 of his Memorandum that once the

Court of Appeals rules, Mrs. Minor does not need to garnish whatever amount is found to still be

owing of the $10,715.00 after this Court complies with the Mandate of the Court of Appeals, for

as stated above, it will either be paid to Mrs. Minor as child support or to Ms. Crawford as

property of the bankruptcy estate.  But this too is utterly irrelevant as to how this Court is to

decide Mr. Minor's Motion, save to say that we further agree with Mr. Minor that before there can be a payout of the funds of the suspension bond, the "contingency" of the bond must be fulfilled, which is when the Court of Appeals rules on the appeal of Case Number CH09-03 and this Court rules on its Mandate, which has not yet happened. Again, Mr. Minor's Motion is simply premature.

76.    We also agree with Mr. Minor in Paragraph 6 of his Memorandum where he says that your Petitioner paid two suspension bonds to secure Judge Geisler's judgment in his 2010 child support order, which was ultimately affirmed in part and reversed in part by the Court of Appeals in 1382-10-3.    But it is the effect of this reversal under Virginia law that is meaningful to Mr. Minor's Motion, which explains why he ignored it, and should cause this Court to deny the Motion.    When the Court of Appeals reversed Judge Geisler's 2010 child support order, that order became void and the parties were restored to their original positions as though the first trial never took place.    See *Nassif v. Board of Supervisors*, 231 Va. 472, 480-481 (1986) and *Ford Motor Company v. Jones*, 206 Va. 404, 407 (2003).    Then, because Judge Geisler's 2010 child support order is void, so too is the suspension bond, as the later is based on the former. *Ferry Co. v. Commonwealth*, 196 Va. 428, 432 (1954) and *Harris v. Deal*, 189 Va. 675, 687 (1949). The effect of the 2010 and 2011 suspension bonds being void is that "[b]y it no rights are divested and from it no rights are obtained. All claims flowing out of it are void," quoting *Harris*.  And yet Mr. Minor is arguing that because the conditions of the 2010 and 2011 suspension bond are satisfied, Respondent Minor should receive the funds.  But per *Harris*, that void suspension bond cannot divest me of my property rights in the money nor can it confer a right upon Respondent Minor to the funds.

77.    Indeed, as explained above, this is the same argument he made before Judge Gibb, who rejected this argument and refused to disburse the funds, finding that the bond was actually satisfied by your Petitioner paying off his arrears as found by Judge Dorsey, which including his arrears as found by Judge Geisler.  The fact of the satisfaction cuts against Mr. Minor obtaining the funds, but because Judge Gibbs' order is the law of this case under the Law of the Case Doctrine, this Court is bound to keep the money until the Court of Appeals rules.

78.    But for this Court's 12/28/18 child support order, which we deal with below, because the parties are restored to their pre-2010 child support order state per *Nassif* where your Petitioner did not owe Mrs. Minor anything (Judge Geisler found your Petitioner current through 1/1/09), he could have requested and upon doing so, should have received the $10,715.00 back when the matter was before Judge Gibb.  But he asked Judge Gibb for the Court to keep the funds pending the outcome of the case on remand, believing he would owe something when the case was ultimately resolved.  See Judge Gibb's two relevant orders that were attached to Mr. Minor's Motion.  This is the law of this case.

79.    As the entire basis of Mr. Minor's Motion is in contradiction to Virginia law and as he makes no effort to distinguish this case from the cases cited above, his Motion should fail.

80.    We also agree with Mr. Minor in Paragraph 7 of his Memorandum where he says that he filed a motion for disbursement of the bond, which was granted in part as to his appeal costs and denied in part as to the disbursement of the $10,715.00.  He then filed a motion to reconsider this denial and was again refused.  But it is the reason and the effect of this double refusal that is meaningful to Mr. Minor's Motion, which explains why he ignored it, and should cause this Court to deny it.    As stated above, despite the fact that he was entitled to the money, your

Petitioner asked Judge Gibb to keep the money. Tacitly, Judge Gibb agreed with your Petitioner that he was entitled to the money, else his consent for the Court to keep it would be meaningless, not noteworthy. And Judge Gibb twice denied Mr. Minor's motion to disburse the funds to him. This issue has been decided. And while Mr. Minor appealed this denial in 1613-14-3 and 1614-14-3, the Court of Appeals refused to order the suspension bond given to him or even order the Bristol Circuit Court to do so. He lost. As this matter has been litigated and decided by Judge Gibb contrary to Mr. Minor and that decision affirmed by the Court of Appeals, the law of the case doctrine applies per 1613-4-3 and this Court has no authority to disburse the $10,715.00 to Mr. Minor under the terms of the 2010 suspension bond.

81.    We also agree with Mr. Minor in Paragraph 8 of his Memorandum where he says that he the Court of Appeals in 1613-14-3 and 1614-14-3 commanded this Court to disburse the bonds in keeping with the rights of the parties, but not in keeping with the suspension bond. Mr. Minor says this Court should follow the 2010 suspension bond, but that is not what the Court of Appeals says. It says that it should disburse the $10,715.00 in keeping with the rights of the parties. Now, there are two ways to look at this:  1) this Court did decide the rights of the parties with its 12/28/18 child support order, finding that those rights did not empower the Court to decide the matter, and 2) that those rights have yet to be determined with finality.

82.    Concerning the first way to look at this issue, we have come full circle to our argument at the beginning of this Motion that because this Court already decided the matter and because it was decided more than 21 days ago and because the matter was appealed, this Court no longer has the subject matter jurisdiction to grant Mr. Minor's Motion, which means it must deny it, for any order it enters other than denial would be void.

83.    Concerning the second way to look at it, if the rights have not yet been determined with finality, the Court cannot grant Mr. Minor's Motion else it will be in violation of the Court of Appeal's mandate, which said the disbursement must be in keeping with the rights of the parties when those rights are yet unknown, and Virginia law pertaining to suspension bonds. We have argued Virginia law pertaining to suspension bonds abvove. Suffice it to say, the suspension bond has been paid, carrying with it a mandatory suspending of the execution of the bond.

84.    Next, in Memorandum, Paragraph 9, Mr. Minor argues that the 2010 and 2011 bonds are only valid, at best, through the 2018 order. But he cited no legal authority for this proposition. Indeed, when you excise all his irrelevant citations in Memorandum, Paragraphs 1-5, there is not a single legal justification offered by Mr. Minor in support of his Motion, not one! And while it may be true that nothing in the prior orders speaks of this issue, the Virginia Code does. Specifically, Va. Code §8.01-676.1(C) states that:

> Such security shall be continuing and additional security shall not be necessary except as to any additional amount which may be added or to any additional requirement which may be imposed by the courts.

So until this case is resolved with finality, the security given in this case, be it in 2010, 2011 or 2019 shall continue to be security for this case, and let us not forget that we continue to be on the same case from 2010. Mr. Minor is simply wrong to state that the security given in 2010 and 2011 is not continuing.

85.    Finally, Mr. Minor argues in Memorandum, Paragraph 10, that the $10,715.00 cannot be considered part of your Petitioner's suspension bond because it belongs to the bankruptcy estate. But this is a non-sequitur. It is also without legal authority. It is also based on a false factual/legal premise. Mr. Minor says if the Court considers the $10,715.00 to be part of your

Petitioner's suspension bond, the Court will violate the automatic stay. But what Mr. Minor is

hiding from the Court here, though he confessed it earlier, is that the Bankruptcy Court lifted the

automatic stay as to these funds and granted to this Court the authority to determine who owns

these funds. See the 8/28/18 Order of Judge Carlota M. Bohm of the U.S. Bankruptcy Court for

the Western District of Pennsylvania, which is attached as Exhibit 2. Thus, even the basis for Mr.

Minor saying that the $10,715.00 cannot be considered part of the suspension bond must fail.

86.    Indeed, if Mr. Minor was right, that the stay was still in place, this Court would have

already been obligated to turn over the funds to the Ms. Crawford and there would be nothing

left of the 2010 and 2011 suspension bonds for Mr. Minor to seek. The fact of the matter, as

Judge Bohm's order makes clear, the Trustee did move to seize the funds as part of the

bankruptcy estate and Judge Bohn denied that Motion in her 8/28/18 order. She did this in no

small part based on Respondent Minor's Objection to that Motion, stating that "[t]he Trustee

cannot do anything with the money before the interests of the parties (and Mr. Barrett's second

wife, a non-party) are resolved, which can best be done in the state courts." An excerpt of

Respondent Minor's Objection is attached as Exhibit 3. Judge Bohm agreed with Mr. Minor,

making it a violation of the doctrine of judicial estoppel for him to argue to the contrary in this

Court now. Mr. Minor continued to play "fast and loose with the courts or blowing hot and cold

depending on perceived self-interest." In Bankruptcy Court, Mr. Minor argued that this Court

should decide what to with the funds *notwithstanding* the bankruptcy. Here, he is arguing that

this Court cannot consider the funds *because* of the bankruptcy. Fortunately, this Court does

not need to split hairs, for Judge Bohm gave this Court plenary authority over the funds and only

if it ultimately determines the funds are your Petitioners and not Mrs. Minors as child support, it

must turn the funds over the Trustee.  For now, the Court decides what do with these funds based on Virginia law.  And Virginia law, as argued above, is that the Court keep the funds in suspension until the case is decided by the Court of Appeals, and upon a reversal, this Court based on the Court of Appeals mandate and Virginia law.

87.    As a side note, when discussing Mr. Minor's Motions with Ms. Crawford in person on 7/1/19, she said she had no idea what Mr. Minor was doing, stating the Bankruptcy Court had released the stay as to these funds.  I doubt she will be in Grayson County on 7/19/19, for she knows that what Mr. Minor is seeking cannot be had by him.

88.    Finally, as to the suspension bond, Mr. Minor has asked the Court for relief based on a logical fallacy, specifically the fallacy of the excluded middle or the false dilemma fallacy.   It is not that the Court must give Respondent Minor the funds now or give the money to Ms. Crawford now.  Rather, the Court can choose to follow Virginia law, affirms that the 2019 suspension bond has been paid and simply keep the funds until such time as the Court of Appeals rules.

### The Bottom Line

89.    This Court needs to ask itself two simple questions:  is its holding $105,206.12 on behalf of your Petitioner and may it use those funds to satisfy your Petitioner's child support order in the event the Court of Appeals affirms this Courts 12/28/18 child support order?  The answers are clearly yes and yes.  Given this, Mr. Minor's Motion must fail and execution must be suspended under Virginia law, which Judge Bohm says is controlling.  Mr. Minor's Motion is frivolous and not based on any law (literally!), facts that are contrary to reality and arguments that have already been ruled on contrary to his position.  He needs to be sanctioned.

### Mr. Minor's Motion as to the Civil Case is Also Frivolous

90. In addition, by separate Motion, Mr. Minor has asked this Court to substitute Ms. Crawford as the Plaintiff in Case Number CL10000145 or, in the alternative, to dismiss the case, both of which are based on Ms. Crawfords interest in the lawsuit as Trustee of your Petitioner's Bankruptcy Estate.

91. While all that is good and well, during a hearing on 7/01/2019, Ms. Crawford indicated her intent to abandon her interest in the lawsuit.

92. This caused Judge Bohm to ask Mr. Minor if he would agree to a consent order rather than make Ms. Crawford, who admittedly is not licensed in Virginia and who knows nothing of Virginia personal injury law, prosecute this suit.

93. Mr. Minor agreed to a consent order that would have Ms. Crawford abandon her interest in the lawsuit.

94. As the order, a copy of which is attached as Exhibit 4, was being circulated, Mr. Minor objected to the language in Paragraph 2, claiming that it would allow this Court to keep the money until the Court of Appeals rules, by which I assume he means that it would thwart his Motion as to the $10,715.00.

95. But this is nothing but Mr. Minor interposing an objection for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. More on this below.

96. We know this because the language of Paragraph 2 matches almost word for word with the second operative paragraph of Judge Bohm's 8/28/18 Order in Exhibit 2. The only difference is in the original order, the Court must turn over the funds if any are found to belong to me and

in the new order, I must turn those same funds over. This is based on a conversation Ms. Crawford and I have had in the past.

97.     But this difference is not what Mr. Minor is objecting to. Rather, it is his baseless fear that this paragraph will make this Court immune from his arguments as to his being given the $10,715.00. But this is clearly nonsense. The language does nothing of the kind. It merely reiterates what has already been ordered.

98.     Indeed, you will note that Mr. Rubleto, Steve and Jill Minor's attorney in the bankruptcy, has signed the order, indicating even he agrees that it correctly states the law of the bankruptcy case.

99.     At the present time, Ms. Crawford has filed the unsigned order with Judge Bohm, but she has yet to inform the parties of what she intends to do with it, if anything.

100.    Nevertheless, in light of the fact that Ms. Crawford has *de facto* abandoned her interest in the lawsuit, and it is Mr. Minor who is unreasonably preventing it from being a *de jure* abandonment, I e-mailed Mr. Minor if he would please withdraw his Motion as its foundational factual predicate was no longer valid. But he has refused.

101.    In other words, Mr. Minor is not even willing to allow dead issues to be dead and, instead, desires to waste your Petitioner's time and money, the Court's time and even his own time and money.

102.    What purpose will it serve? This is merely him being obstinate to gain his pound of flesh even to his own harm, using the law as the tool of his obstinance.

103.    And this is why Va. Code §8.01-271.1 disallows such frivolous pleadings and sanctions those attorneys who insist upon filing and arguing them.

104.     This conduct not only justifies sanctions, but should cause this Court to notify the Virginia

State Bar as to Mr. Minor's unethical conduct per Rule 3.1, 3.3 and 3.4 of the Rules of Professional

Conduct.

### Mr. Minor's Motion as to the $54,147.48 and his Subpoena are Also Frivolous

105.     Mr. Minor has also filed a Motion seeking from the Court an order disbursing to the

Respondents the $54,147.48 that was paid to the Court on your Petitioner's behalf by his wife.

106.     He also filed and had served upon your Petitioner's wife, Kathleen C. Barrett, a subpoena

to compel her attendance at the hearing on his motions on 7/19/19.

107.     Both this Motion and this Subpoena are utterly frivolous.

108.     There is no question that the Court is holding onto $105,206.12 on your Petitioner's

behalf as security for a lawfully executed suspension bond per the Court's 2/8/19 Order, setting

the suspension bond in such an amount as requested by Mr. Minor.

109.     As argued above, Virginia law commands that such **shall** suspend all further collection

efforts pending the outcome of the appeal.  Thus, Mr. Minor cannot have the relief he is seeking.

110.     We note that Mr. Minor has not called into question the suspension bond itself.

111.     Rather, Mr. Minor has taken the position that $10,715.00 of that $105,2006.12 does not

belong to your Petitioner despite the fact that it is to be used, in the first instance, to pay any

child support obligation your Petitioner may owe after the Court of Appeals has ruled on your

Petitioner's appeal of this Courts 12/28/18 child support order.

112.     But for the reasons explained above, this position is utterly frivolous.

113.     Indeed, child support debt it a priority debt and U.S. Bankruptcy Law and must be paid

prior to all others lesser-priority debts.

112.    Thus, Mr. Minor knows that the $10,715.00 will be used to pay toward child support unless the Court of Appeals reverses this Court's 12/28/18 child support order and finds that your Petitioner owes less than $10,715.00 to the Respondents in the final analysis.

113.    Mr. Minor also knows that any of the $10,715.00 that is not paid to the Respondents as child support will be paid to Ms. Crawford for your Petitioner's other debts.

114.    Mr. Minor also knows that until the Court of Appeals rules, this Court cannot know which contingency as to ownership will be fulfilled, putting the Court in a very bad position if the Court guesses incorrectly.

115.    Given this, there is no reason to consider it any other way other than as 2019 suspension bond money at the present time, which means your Petitioner's suspension bond is paid-in-full and not subject to any further collection efforts until the Court of Appeals has ruled.

116.    But Mr. Minor also knows, and the Court knows through the evidence at the trial on the merits of this case, that Mrs. Barrett is a woman of substantial means, and that no matter how the Court rules on Mr. Minor's motion on the $10,715.00, Mrs. Barrett has the ability and wherewithal to provide to the Court another cashier's check in the amount of $10,715.00, again making the suspension bond paid-in-full, making his Motion pointless.

117.    Mrs. Barrett is prepared to do what is necessary to defend her interest in her money.

118.    Furthermore, Mr. Minor knows that Mrs. Barret is entitled to and has demanded a jury trial on her claim that the $54,147.48 belongs to her, which is here right per *Barbuto v. Southern Bank*, 231 Va. 63 (1986).

119.    This means, among other things, that Mr. Minor knows cannot have the relief he is seeking on 7/19/19 no matter the outcome of his other Motions as the hearing on 7/19/19 is a motions hearing, not a jury trial.

120.    Still furthermore, Mr. Minor has heard the testimony of your Petitioner as to his financial condition, in intimate with your Petitioner's bankruptcy filing, and has obtained information from your Petitioner's children to know that he has no income or assets from which to come up with any amount of money toward his suspension bond on his own accord.

121.    Thus, he knows that the only way for your Petitioner to have funded the suspension bond was via the good graces of his wife.

122.    Mr. Minor knows that the outcome of any jury trial will be a judgment in favor of Mrs. Barrett.  He has no evidence to the contrary to challenge her claims, for no such evidence exists.

123.    Still furthermore, he also knows that almost anything he would ask Mrs. Barrett concerning these funds would be protected by the husband-wife privilege of Va. Code 8.01-398.

124.    We know Mr. Minor knows this because he, himself, repeatedly asserted this same privilege during his wife and his own deposition in this case.

125.    Thus, it will avail him not one bit to have subpoenaed your Petitioner's wife to testify on 7/19.

122.    Therefore, your Petitioner moves to quash that subpoena.

123.    Mr. Minor's intent in having the subpoena issued and served was made clear in his 6/18/19 cover letter to the Clerk of Court in which he makes it clear that he subpoenaed the Petitioner's wife to punish the Petitioner for not posting a suspension bond to his liking in the way he thought it should be done.

124.   But this is an improper purpose that further demands Mr. Minor be sanctioned.

### *Final Thoughts*

125.   As if all this was not bad enough, your Petitioner contacted Mr. Minor to ask him to agree to both parties participating by phone, as has been done in the past, specifically concerning the hearing on the suspension bond.

126.   Mr. Minor refused.

127.   This has put an enormous burden on your Petitioner in having to drive 12 hours back and forth across the state, eat out and even stay in a hotel should the hearing run long.

128.   Why did he refuse?  He did not state a reason, but it is obvious that he is trying to put pressure on your Petitioner (and his wife!) to accede to his demands for the money, which is both harassment and needlessly increasing the cost of litigation.

129.   But Mr. Minor has made it clear that he will spend untold sums on fighting a case with a very negative return on investment.

130.   This not only includes his 5 hour round trip to Grayson County, but his trip number 8 to U.S. Bankruptcy Court in Pittsburgh, PA on 7/1/19.  Imagine what must go through ones mind to spend 13 hours in a round trip to Pennsylvania and back at an hourly rate of $210.00 per hour to ensure he collects $10,715.00.  Putting this another way, Mr. Minor has spent a minimum, for we do not know his other expenses in making the trip, $21,840.00 to ensure he has a chance at collecting $10.715.00.  What man in his right mind motivated by proper motivations would do such a silly thing?    Ironically, no matter what, unless the Court of Appeals reverses, the Respondents would get this money anyway because, again, child support is a priority debt.  And we note that even if the Court of Appeals does reverse and your Petitioner owes nothing to Mrs.

Minor as child support, the Minors will still get a large percentage of this money as they are creditors of your Petitioner in other, unrelated cases.

131.    Of course, this $21,840.00 shrinks to insignificance when you consider that Mr. Minor is close to having spent $300,000.00 worth of his time in chasing what is, at most, a tiny fraction of a return on investment.

132.    So, it is clearly not the money that is motivating the Minors.   What else could it be? Clearly, they are willing to do and say anything to hurt your Petitioner, using the legal system as their weapon *de jur*.   But the Law does not allow this.   Therefore, this Could should sanction Mr. Minor as requested.

133.    Of course, your Petitioner has not had clean hands in this regard, so any sanction imposed by the Court would merely offset the sanctions against your Petitioner.   But they should, nevertheless, be imposed on Mr. Minor.

**TIMOTHY M. BARRETT**

BY: _____

*Pro Se* Petitioner

Mr. Timothy M. Barrett
108 Galaxy Way
Yorktown, Virginia 23693
(757) 342-1671
Viceregent@cox.net

**CERTIFICATE OF SERVICE**

I, Timothy M. Barrett, do hereby certify that a true and accurate copy of the foregoing Motion for Sanctions, Motion to Quash and a Response to Respondent Minor's Motion as to the $10,715.00 and Other Motions and Her Memorandum in Support of Said Motion was served via U.S. Mail on was served, via U.S. first class mail, on Mr. Stephen Solomon, Esquire, at 629 Cedar Creek Grade, Suite A, Winchester, VA 22601, and on Mr. Steven R. Minor, Esquire, at 110 Piedmont Avenue, Suite 300, Bristol, Virginia 24201 on this, the 9th day of July, 2019.

Timothy M. Barrett

# EXHIBIT 1

IN THE CIRCUIT COURT OF GRAYSON COUNTY, VIRGINIA

| | | |
|---|---|---|
| *TIMOTHY M. BARRETT,* | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Case No. CJ 09-03 |
| | ) | |
| *COMMONWEALTH OF VIRGINIA* | ) | |
| *DEPARTMENT OF SOCIAL* | ) | |
| *SERVICES DIVISION OF CHILD* | ) | |
| *SUPPORT ENFORCEMENT ex rel.* | ) | |
| *VALERIE JILL RHUDY BARRETT* | ) | |
| | ) | |
| Respondent | ) | |

## ORDER

On the matter of the appeal bonds for this case, it is hereby ordered that the Clerk will disburse from the funds on deposit the sum of $653.00 to Ms. Barrett, care of her counsel, for the costs awarded by the Court of Appeals in this case. The disposition of the remainder of the cash on deposit will be in accordance with an order to be entered in Case No. 09-04.

All parties having received reasonable notice of the time and place for the presentation of this order pursuant to Rule 1:13, the Court dispenses with the requirement of endorsements of this Order.

ENTER:    This the ___9__ day of November, 2012.

Sharon A. Hall

_____
CIRCUIT COURT JUDGE

Requested by:

_____
Counsel for Ms. Barrett

See last page for Petitioner's objections.

SEEN AND OBJECTED TO FOR THE MANDATE OF THE COURT OF APPEALS AWARING COSTS AND OTHERWISE IN THIS CASE AND IN CASE CJ09-04 IS UNCONSTITUTIONAL IN THAT IT VIOLATES YOUR RESPONDENT'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION IN KEEPING WITH HIS BRIEF AS TO THIS ISSUE:

_Timothy M. Barrett_

Timothy M. Barrett

3

## IN THE CIRCUIT COURT FOR GRAYSON COUNTY, VIRGINIA

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA ) <br> DEPARTMENT OF SOCIAL ) <br> SERVICES DIVISION OF CHILD ) <br> SUPPORT ENFORCEMENT ex rel. ) <br> VALERIE JILL RHUDY BARRETT ) <br> ) <br>     Petitioner ) <br> ) <br> v. ) <br> ) <br> TIMOTHY M. BARRETT ) <br> ) <br>     Respondent ) | Case No. CJ 09-04 |

### ORDER

On the matter of the appeal bonds for this case, the Court has reviewed and considered Ms. Minor's motion dated June 7, 2012, including the attachments; Mr. Barrett's written arguments, including his letters to the Court dated May 25, 2012, and August 6, 2012; the oral arguments from the first hearing that Mr. Barrett did not attend in Christiansburg on June 19, 2012, and the second hearing held by telephone conference on August 10, 2012; and the arguments raised in Ms. Minor's motion for reconsideration, dated August 14, 2012.

The Court rules as follows:

1.    the Motion to Enforce Appeal Bond is granted in part as to the costs awarded by the Court of Appeals for this case, which are $670.00; and

*Sharon A. Hale*

2.      the Motion to Enforce Appeal Bond is denied in part as to the

arrearage of $9,896.00 and any remainder in excess of the costs for the two

appeals, and the Motion for Reconsideration denied, because the Court has

concluded that Mr. Barrett's June 2011 payment in connection with the withdrawal

of his appeal to this Court in the separate enforcement action, No. CJ 10-40,

satisfied the judgment for the arrearage in this case, ~~and~~ ~~in the alternative~~ because

the Commonwealth and Ms. Minor are judicially estopped from claiming that the

judgment in the separate enforcement action did not include the arrearage from this

case, ~~or in the second alternative because a new arrearage will necessarily be~~

~~determined as part of the outcome of the remand of Case No. 09-03.~~ Consistent

with Mr. Barrett's request, and the representation of counsel for DCSE that Mr.

Barrett has not been paying support, the Court will keep the remainder of the funds

on deposit.

Based on this conclusion, it is hereby ordered that the Clerk will disburse

the funds on deposit as follows:

1.      $670.00 to Ms. Minor by way of her counsel for the costs in this

case, in addition to the $653.00 to Ms. Minor for the costs in Case No. 09-03, as

ordered in that case, and

2.      the remainder shall be held by the Clerk until further order of this

Court.

2

ENTER:    This the 9ᵗʰ day of November, 2012.

_____
CIRCUIT COURT JUDGE

Requested by as to Part No. 1 and objected to as to Part No. 2 on grounds previously stated orally and in writing:

_____
Counsel for Ms. Barrett

~~Scanned objected to for the m~~

See last page for Respondent's objection

3

SEEN AND OBJECTED TO FOR THE MANDATE OF THE COURT OF APPEALS AWARING COSTS AND OTHERWISE IN THIS CASE AND IN CASE CJ09-03 IS UNCONSTITUTIONAL IN THAT IT VIOLATES YOUR RESPONDENT'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION IN KEEPING WITH HIS BRIEF AS TO THIS ISSUE:

Timothy M. Barrett

# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:

TIMOTHY M. BARRETT,

    Debtor.

ROSEMARY C. CRAWFORD,
Chapter 7 Trustee,

    Movant,

        v.

TIMOTHY M. BARRETT, TWENTY-
EIGHTH JUDICIAL CIRCUIT COURT,
etc., and VALERIE JILL MINOR,

    Respondents.

Case No. 17-20621-CMB

Chapter 7

Related to Doc. No. 91

## ORDER DENYING TRUSTEE'S MOTION TO DIRECT BRISTOL, VA CIRCUIT COURT TO DISBURSE ESCROWED FUNDS OVER TO TRUSTEE ROSEMARY C. CRAWFORD

Upon consideration of the Trustee's Motion to Direct Bristol, VA Circuit Court to Disburse Escrowed Funds over to Trustee Rosemary C. Crawford, and the Response of Valarie Jill Minor thereto, and notice appearing appropriate, it is hereby

ORDERED that the referenced Motion is hereby DENIED without prejudice; and it is further

ORDERED that any parties in interest are authorized and granted relief from stay to the extent necessary to resolve the ownership dispute of the funds at issue in the Courts of the Commonwealth of Virginia. In the event that a determination is made that money is property of Debtor, then any funds shall be disbursed to the Trustee, not the Debtor, unless an exemption is allowed; and it is further

ORDERED that this Court shall retain jurisdiction over the interpretation and enforcement of this Order.

Entered: August 28, 2018

FILED
8/28/18 4:17 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

Carlota M. Böhm,
United States Bankruptcy Judge

# EXHIBIT 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:

TIMOTHY M. BARRETT,

      Debtor.

-------------------------------------------------

ROSEMARY C. CRAWFORD,
Chapter 7 Trustee,

      Movant,

TIMOTHY M. BARRETT,
TWENTY-EIGHTH JUDICIAL
CIRCUIT COURT, etc., and
VALERIE JILL MINOR,

      Respondents.

Case No. 17-20621-CMB

Chapter 7

Doc. Nos. 80-94

Response Deadline: August 13, 2018

Hearing Date and Time:
    August 28, 2018 at 2:30 p.m.

## OBJECTION OF VALERIE JILL MINOR TO
## TRUSTEE'S MOTION TO DIRECT BRISTOL, VA CIRCUIT COURT TO
## DISBURSE ESCROWED FUNDS OVER TO TRUSTEE ROSEMARY C. CRAWFORD

      Ms. Minor submits the following as her Objection to the Trustee's Turnover Motion,

ECF No. 91.

      1.     The Trustee's Motion should be denied without prejudice, because the bankruptcy

estate does not have a right to the money at this time.

      2.     The money comes from the appeals of two cases about Mr. Barrett's child support

obligation to Ms. Minor, *Barrett v. Com.*, Case No. CJ 09-03, and *Com. v. Barrett*, Case No. CJ

09-04. The Grayson County Circuit Court entered final orders on June 22, 2010. The final orders

provide that his child support arrearage for the first eight months of 2009 was $9,896.

      3.     Mr. Barrett appealed both orders and executed appeal bonds. In Record Nos.

1381-10-3 and 1382-10-3, the Court of Appeals ordered an increase in the amount of the bonds.

19.     By the agreed order, ECF No. 89, the Trustee had agreed that the litigation in the state courts would decide (at least initially) how this money should be disbursed, so long as the money was not refunded to Mr. Barrett, but by her latest motion the Trustee has evidently changed her position.

20.     The property interest of Mr. Barrett and the bankruptcy estate in the cash held by the Clerk is limited in two ways. First, some or all of the money belongs to Ms. Minor, under the terms of the bonds, and pursuant to Mr. Barrett's domestic support obligations. Second, any leftovers might belong to Mr. Barrett's second wife, whose money it was originally.

21.     In particular, the state courts might conclude that the payment of the appellate fees awarded by the Court of Appeals in Record Nos. 1381-10-3 and 1382-10-3 is a condition of the bonds, as part of the "damages, costs, and fees that [were] awarded against [Mr. Barrett] in the Court of Appeals."

22.     In the alternative, the Grayson County Circuit Court (and Mr. Barrett) intended in 2012 that the money would go toward the next judgment for an arrearage, when the Court ruled that it would keep the rest of the money and Mr. Barrett had agreed to it. The Division's proof of claim in this case, Claim 4-1, is for an arrearage of more than $130,000. Even if the existing order is modified retroactively in the reinstated Case No. CJ 09-03, the arrearage is likely to be substantially more than $10,715.

23.     The money is not going anywhere. The automatic stay continues in effect with respect to whatever interest the estate has in these funds. 11 U.S.C. § 362(c)(1).

24.     The Trustee cannot do anything with the money before the interests of the parties (and Mr. Barrett's second wife, a non-party) are resolved, which can best be done in the state courts.

5

# EXHIBIT 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| BARRETT, TIMOTHY M., | ) | BANKRUPTCY NO.. <u>17-20621-CMB</u> |
| | ) | |
| Debtor, | ) | Chapter 7 |
| | ) | |
| TIMOTHY BARRETT, | ) | Doc. No. |
| | ) | |
| Movant, | ) | Hearing Date: 7/1/19 @ 2:30pm |
| | ) | Related Doc: 120,129 |
| ROSEMRY C. CRAWFORD, | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Respondent. | ) | |

## CONSENT ORDER ON ABANDONMENT O CERTAIN PROPERTY OF THE ESTATE TO THE DEBTOR

NOW, UPON THE CONSENT OF THE PARTIES, it is hereby ORDERED,

ADJUDGED and DECREED that The Trustee's interest in Debtor's claim against the Movant

for compensatory and punitive damages, now pending in the Grayson County Circuit Court as

Case No. CL 10-145, is abandoned to the Debtor, and said property shall no longer be

property of the Bankruptcy Estate;

It is FURTHER ORDERED that in the event that Debtor receives the interest in the

proceeds (approximately $10,715.00) that were held in escrow in the Twenty-Eight Judicial

Circuit Court, Virginia, City of Bristol, Debtor will immediately turn the funds over to Trustee

Rosemary Crawford, who may deposit those funds without further Order of this Court.

It is FURTHER ORDERED that Counsel for Mr. Minor shall serve a copy of this notice

on all interested parties, including the creditors matrix immediately and file a certificate of

service.

If no objections are filed to the terms of this Order within fourteen (14) days, the terms of this Order will be deemed final.

BY THE COURT

_____
CHIEF JUDGE CARLOTA M. BÖHM
United States Bankruptcy Judge

DATED: _____

CONSENTED TO:

_____
Timothy Barrett, Pro se Debtor

_____
Steven R. Minor, Esquire
Elliott Lawson & Minor
Office: (276) 466-8400
Direct: (276) 644-3482
Mobile: (276) 698-8337
www.elliottlawson.com

/s/ Aurelius P. Robleto
Aurelius P. Robleto
PA ID No. 94633
ROBLETO LAW, PLLC
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222
Tel: (412) 925-8194
apr@robletolaw.com
Attorney for Steve and Valerie Minor

/s/ Rosemary C. Crawford
Rosemary C. Crawford, Esq., Trustee
Crawford McDonald, LLC.
P.O. Box 355
Allison Park, PA 15101
Pa. I.D. No. 56981
(724) 443-4757
crawfordmcdonald@aol.com